FILED

2015 Jul-20  PM 04:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| TIMOTHY LAKE FARMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14-CV-00627-TMP |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

## I.    Introduction

The plaintiff, Timothy L. Farmer, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB").  Mr. Farmer timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Farmer was thirty-eight years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a high school education and is able to communicate in English.  (Tr. at 34).  His past work experience includes employment as a meter reader, tire changer, assembler, parts picker, forklift driver,

lube technician, and automobile salesman. *Id*. Mr. Farmer claims that he became disabled on October 12, 2008, due to disorders of the lower back. (Tr. at 30).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual

functional capacity will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent him from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; and, once that burden is met, the claimant must prove his inability to perform those jobs in order to be found disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Mr. Farmer meets the non-disability requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. at 30). He further determined that Mr. Farmer had not engaged in substantial gainful activity since the alleged onset

of his disability in October 2008. *Id*. According to the ALJ, Mr. Farmer's "disorders of the low back" are "severe" based on the requirements set forth in the regulations because the disorders significantly limit Mr. Farmer's ability to perform basic work activities. *Id.* However, the ALJ determined that Mr. Farmer's obesity is not severe under the regulations.[1] (Tr. at 30). The ALJ noted that "the claimant alleges no limitations due to his obesity, and no physician has placed any restrictions on him due to his obesity." *Id*. He found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 31). The ALJ did not find Mr. Farmer's allegations regarding the limiting effects of his lower-back pain to be totally credible, and he determined that he has the following residual functional capacity: "light work as defined in 20 CFR 404.1567(b) that allows for no work on uneven surfaces, occasional stooping, use of a cane, no exposure to continuous vibrations, and no work around unprotected heights." *Id*.

According to the ALJ, Mr. Farmer is unable to perform any of his past relevant work.[2] He determined that "transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a

---

[1] This finding is not contested by the claimant.

[2] The ALJ qualified his determination by stating that, "[w]hile the expert testified that some auto sales jobs can be performed based on the claimant's residual functional capacity, there are issues with respect to the recency and duration of the claimant's work in auto sales that call into question whether the job qualifies as past relevant work. Thus, I find that further evaluation of the sequential evaluation process is in order out of an abundance of caution." (Tr. at 34).

framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (Tr. at 34). Although Mr. Farmer's ability to perform all or substantially all of the requirements of light work is affected by additional limitations, through use of expert testimony, the ALJ determined that jobs exist in the national economy that an individual of Mr. Farmer's age, with his education, work experience, and residual functional capacity, can perform. (Tr. at 35). Some of these jobs are ticket seller, assembler of electrical accessories, and marker II. *Id.* The ALJ concluded his findings by stating that Mr. Farmer "has not been under a disability, as defined in the Social Security Act, from October 12, 2008, through the date of this decision." *Id*.

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not

decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or

decision of disability."   20 C.F.R. §§ 404.1527(e), 416.927(d).   Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner."   *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).   Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III.   Discussion

Mr. Farmer alleges that the ALJ's decision should be reversed and remanded because the ALJ failed to properly evaluate the credibility of the Plaintiff's testimony of disabling symptoms consistent with the Eleventh Circuit pain standard.   Specifically, Mr. Farmer alleges that "the ALJ's decision that he does not meet the pain standard is based on his erroneous negative credibility findings as to his subjective pain testimony."   (Doc. 12, p. 4).   Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence.   *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).   To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and

either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he or she articulates explicit and adequate reasons for doing so, and those reasons are supported by substantial evidence in the record. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996)("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole." *Id*. (internal quotations omitted). In the present case, the ALJ found that Mr.

Farmer meets the first prong of the Eleventh Circuit's pain standard, but that the evidence does not support the severity of the alleged pain arising from the lower back disorders. (Tr. at 32). Specifically, the ALJ determined that Mr. Farmer's statements concerning the intensity, persistence, and limiting effects of the lower back pain are not credible to the extent that they are inconsistent with objective medical evidence in the record. *Id*.

Throughout his analysis, the ALJ found inconsistencies between Mr. Farmer's allegations at the disability hearing and the objective medical evidence provided in the record.

> In terms of the claimant's back-related pain, the objective medical evidence and other evidence indicate that he retains the ability to perform work activity on a sustained basis within the parameters of the above-stated residual functional capacity. It is true that approximately consistent with his alleged onset date, he presented to the emergency department in September 2008 with low back pain complaints, and radiological findings revealed moderate spinal canal stenosis and mild bilateral neural foraminal narrowing at L4-L5 secondary to a broad-based bulge, facet arthropathy, and ligamentum flavum hypertrophy (Exhibit 1F). He was prescribed pain medication for his back at a follow-up visit in September 2008 (Exhibit 2F). Records indicate he was doing well until December 25, 2008, and he then began seeking treatment for his back pain at the VA shortly thereafter (Exhibit 6F, p. 118).
>
> While VA and other records indicate the general need for narcotic pain medication to control pain, there were a number of visits in which clinical and radiological findings, as well as the degree of reported pain complaints, are not supportive of debilitating pain as alleged at the hearing. For example, no pain was reported in January

2009, and "no spinal tenderness" was recorded at that time (Exhibit 6F, p. 107). Also, an MRI of the lumbar spine in February 2009 revealed focal degenerative discogenic and facet osteoarthropathy involving L4-L5 disc space but with only mild narrowing of both existing spinal foramina and without spinal nerve impingement or displacement (Exhibit 6F, p. 98). The claimant then began physical therapy in March 2009 (Exhibit 3F). By April 2009, no spinal tenderness and normal motor strength were noted (Exhibit 6F, p. 87), and it was even reported that he moved his household in April 2009 (Exhibit 3F, p. 4). Further undermining the severity of his symptoms, he was also only prescribed a non-narcotic in May 2009 (Exhibit 6F, p. 32/84) and was discharged from physical therapy for noncompliance in July 2009 (Exhibit 3F). Additionally, he reported pain at only a 3/10 intensity in August 2009, and again "no spinal tenderness" was noted (Exhibit 6F, p. 76). Treatment notes in October 2009 indicate basically unremarkable findings on physical exams and that he was even using a riding lawnmower (Exhibit 6F, pp. 61-68). He was prescribed morphine on February 18, 2010 and scheduled for an L4-L5 epidural steroid injection (see also Exhibit SF), but clinical findings were normal (Exhibit 6F, pp. 50-52). He then had 0/ 10 pain complaint at a visit on February 25, 2010 and was seeking a handicapped tag because of numbness after walking at the mall (Exhibit 6F, p. 43). Furthermore, an MRI of the lumbar spine in April 2010 revealed only mild degenerative changes at L4-L5 with stable mild central canal and bilateral neuroforaminal narrowing (Exhibit 6F, p. 1). When the claimant presented to a treating source, Beau Bagley, M.D., for a disability physical in May 2010, Dr. Bagley noted some ambulatory and musculoskeletal deficits but also noted that the claimant reported doing yard work and had no problem sitting during the duration of the interview (Exhibit 7F).

Additional medical records are likewise not supportive of the claimant's debilitating pain allegations. While he alleged an average pain at 7/10 to 9/10 in intensity at the hearing, he reported pain at 1/10 or 5/10 in July 2010 with only a mild impact on hobbies and moderate impact on chores, sex life, and social life (Exhibit 10F, pp. 79-86). There was indication of an intensity of symptoms in August 2010, which necessitated the provider's prescription for lidocaine patches and submission of paperwork for a parking placard, but the provider noted that the claimant was not in apparent distress and had a negative

straight leg raise (Exhibit 10F, pp. 73-76). And while the claimant sought emergency treatment on September 4, 2010 for lower back pain, the provider remarked that there were "no focal findings or red flags on exam" (Exhibit 10F, pp. 65-70). Pain was then rated only 3/10 on September 23, 2010 (Exhibit 10F, p. 60). Moreover, lessened impact of pain compared to July 2010 was reported in October 2010 in that pain had only a moderate impact on walking and a mild impact on sex life and social life (Exhibit 10F, p. 53). He then reported less pain at a follow-up visit in December 2010 than alleged at the hearing: 6/10 (Exhibit 10F, p. 45).

Similarly, reports through 2011 are not inconsistent with the above finding. While the claimant sought treatment at a Tampa VA pain rehabilitation facility in March 2011, those records indicate his medication regimen is helpful and that he can perform exercises and ambulate independently (Exhibit 11F, p. 9). Those records also indicate a lifestyle more active than alleged at the hearing such as helping his mother with odd jobs and performing yard work (Exhibit 11F, p. 16). Other treatment records through the summer of 2011 indicate that he is "able to function well on morphine" and that although bending can aggravate his pain, he can do "light" work (Exhibit 12F). It is also important to note that he conceded at the hearing of December 2011 that he can lift up to 20 pounds.

With respect to the claimant's alleged side effects, the above precautions sufficiently accommodate him in that regard. As just mentioned, a provider indicated that he can function well on a narcotic. And again, he does house and yard work, as well as walks at the mall. Treatment records otherwise indicate that medications have been adjusted as needed and that he is often observed as alert and oriented despite the use of narcotics.

(Tr. at 32-33).

Mr. Farmer's primary complaint is that the ALJ failed to appreciate the

medical records as a whole, and opted to "pick and choose" instead those portions

of the record suggesting less pain that otherwise reflected in the record.  (Doc. 12, pp. 5-6).  He lists multiple visits where he rated his pain intensity between 7/10 and 10/10.  (Doc. 12, pp. 6-7).  Although the ALJ did not address each medical visit where Mr. Farmer rated his pain as high on the intensity scale, the ALJ did acknowledge that Mr. Farmer indicated at the hearing that "his pain level ranges from 7/10 to 9/10 in intensity."  (Tr. at 32).  "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole."  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal citations omitted).  A review of the ALJ's RFC determination persuades the court that the ALJ did consider Mr. Farmer's medical condition as a whole. The ALJ's consideration of the evidence was not an arbitrary and broad dismissal. After considering the entire record, the ALJ determined that Mr. Farmer has the RFC to perform light work with several limitations.  The fact that the ALJ did not refer to every high pain rating in Mr. Farmer's medical record does not indicate that his determination was not supported by substantial evidence.

Mr. Farmer also contends that the ALJ failed to correctly evaluate the activities of daily life that were used to discredit his subjective testimony.  (Doc. 12, p. 7).  Specifically, he quotes *Lewis v. Callahan*, 125 F.3d 1346, 1441 (11th

Cir. 1997), in which the court held that "participation in everyday activities of short duration, such as housework or fishing does not disqualify a claimant from disability." (Doc. 12, p. 7). However, Mr. Farmer mischaracterizes the ALJ's use of activity evidence. The ALJ does not use evidence of Mr. Farmer's daily activities to disqualify him from receiving disability. He does, however, reference various activities Mr. Farmer participates in to illustrate that Mr. Farmer's subjective pain testimony is not credible. The ALJ notes evidence from the record that Mr. Farmer "moved his household," was "using a riding lawnmower," and was performing odd jobs for his mother. (Tr. at 32). He also notes that the Tampa VA pain rehabilitation facility records indicate that Mr. Farmer, as of March 2011, could "perform exercises and ambulate independently." (Tr. at 32, 33). The ALJ notes that the Tampa VA records "indicate a lifestyle more active than alleged at the hearing such as helping his mother with odd jobs and performing yard work." (Tr. at 33). The ALJ uses these examples of Mr. Farmer's activities of daily living not to disqualify him from disability, but to show inconsistencies between Mr. Farmer's subjective pain testimony at the ALJ hearing and his daily activities reflected in the record. It is the ALJ's responsibility to consider these inconsistencies and determine the credibility of the plaintiff's testimony regarding his symptoms and the limitations they impose. *See* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996). Thus, the ALJ justifiably determined that Mr. Farmer's subjective

pain testimony was not credible when compared to the evidence in the record.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

Finally, the question before this court is not whether Mr. Farmer has some evidence to support his subjective pain testimony, but whether the ALJ provided substantial evidence in support of his decision.  *Moore v. Barnhart*, 405 F.3d 1208 (11th Cir. 2005).  Mr. Farmer ultimately contends that, "the ALJ failed to properly credit the longitudinal medical evidence as a whole." (Doc. 12, pp. 8).  However, the ALJ specifically addressed Mr. Farmer's allegations of pain in his opinion, and he provided explicit and reasonable explanations for rejecting Mr. Farmer's testimony.  There is no indication that the ALJ failed to properly consider Mr. Farmer's subjective pain testimony, or that the ALJ's conclusion was a "broad rejection which is not enough to enable [this court] to conclude that [the ALJ] considered [his] medical condition as a whole."  *Dyer*, 395 F.3d at 1210.  Even if the court were to disagree with the ALJ's ultimate determination, that determination can be reversed only if it is not supported by substantial evidence. Because there is substantial evidence supporting the determination, this court is not authorized to reverse it.  Accordingly, the court finds that the ALJ's conclusion that Plaintiff's condition did not cause disabling limitations and instead shows that he could perform a reduced range of light work is supported by substantial evidence.

## IV.     Conclusion

Upon review of the administrative record, and considering all of Mr. Farmer's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered contemporaneously herewith.

DONE this 20th day of July, 2015.


_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE